Argued and submitted March 18, 2014, affirmed August 12, petition for review denied December 24, 2015 (358 Or 527)

Marla JOHNSON,
*Plaintiff,*

*v.*

OREGON STATE BOARD
OF HIGHER EDUCATION,
Eastern Oregon University,
a public university;
and Robert Davis,
*Defendants.*

Robert DAVIS,
*Cross-Complainant-Appellant,*

*v.*

EASTERN OREGON UNIVERSITY,
a public university; and
Oregon State Board of Higher Education,
*Cross-Defendants-Respondents.*

Union County Circuit Court
060743798; A153477

358 P3d 307

Philip M. Wasley argued the cause for appellant. With
him on the briefs was Wasley Law Office, P.C.

Cody J. Elliott argued the cause for respondents. With him on the brief were Heather K. Cavanaugh, P. C., and Miller Nash LLP.

Before Ortega, Presiding Judge, and DeVore, Judge, and Garrett, Judge.

ORTEGA, P. J.

## ORTEGA, P. J.

Cross-complainant Davis appeals a judgment entered after the trial court denied his motion for partial summary judgment and granted a motion for summary judgment by cross-defendants Eastern Oregon University and the Oregon State Board of Higher Education (collectively, the state). Both motions turned on the issue of whether alleged acts by Davis, particularly an alleged rape, occurred in the performance of his duties as an employee of Eastern Oregon University (EOU). The court ruled that Davis was not entitled to a defense under the Oregon Tort Claims Act (OTCA) as a matter of law. We agree with the trial court that the underlying claims all related to Davis's sexual conduct with a coworker, and, as a matter of law, could not constitute an act or omission occurring in the performance of duty. Therefore, we affirm the grant of summary judgment to the state and the denial of partial summary judgment to Davis.

In appeals involving cross-motions for summary judgment, we review the record for each motion in the light most favorable to the party opposing it. *Eden Gate, Inc. v. D&L Excavating & Trucking, Inc.*, 178 Or App 610, 622, 37 P3d 233 (2002). The parties quibble about the facts but, except where indicated, the facts necessary to resolve the question of whether Davis, an EOU employee, was entitled to a state defense in a civil action brought by another EOU employee are undisputed.

Plaintiff in the principal suit sued Davis for sex discrimination, battery, and intentional infliction of emotional distress, all based on allegations that he had raped her while they attended a conference in Atlanta, Georgia. Davis admitted that a sexual encounter had taken place but claimed that it was consensual. At trial, a jury found that Davis was not liable on all claims and, with the principal claims resolved, this appeal concerns only the question of whether the state has a duty to indemnify Davis for defense costs.

The factual circumstances underlying plaintiff's tort claims are as follows. Davis and plaintiff attended the Atlanta conference as part of their work duties. After conference activities had concluded for the day, Davis, plaintiff, and two other EOU employees went out to dinner, where they

consumed alcoholic beverages and then went to a nightclub for an evening of dancing and drinking. Afterwards, all four employees returned to the hotel. Plaintiff was very inebriated and, after some discussion, Davis offered to bring her to his room to take care of her. At some point between 2:00 a.m. and 4:00 a.m., there was a sexual encounter between Davis and plaintiff, which Davis claims was consensual.

Plaintiff filed a lawsuit against Davis, EOU, and the Oregon State Board of Higher Education, alleging three different claims against Davis, including allegations that Davis was "acting within the course and scope of his duties as an employee of [d]efendant EOU." All three claims, along with seven claims against the other defendants, arise out of the same factual allegations—specifically, that Davis raped plaintiff while they were at the conference in Atlanta and that EOU and its administrators treated plaintiff poorly in the aftermath of those allegations. The common factual allegations also include the assertion that EOU did not remove Davis from campus until more than a month after being notified of the alleged rape and that his employment activities included meetings where plaintiff would be present. However, plaintiff does not allege any conduct by Davis after the alleged rape; his presence in meetings appears to relate to plaintiff's claims that EOU failed to protect her from further harassment by Davis.

Davis sought counsel from the Attorney General to provide him with a defense against plaintiff's claims under ORS 30.285,[1] as we explain further below. After investigating the matter, the Attorney General denied his request, concluding that "the claims asserted against * * * Davis do not arise out of alleged acts or omissions occurring in the performance of duty." Davis then asserted cross-claims for indemnity against the state arising out of the denial of his defense request. After all defendants prevailed on the principal claims, Davis moved for summary judgment on his cross-claims against the state, arguing that he was entitled to a defense because plaintiff had alleged that his acts had occurred in the performance of his employment duties. The

---

[1] ORS 30.285 requires the state to defend its employees for tort claims "arising out of an alleged act or omission occurring in the performance of duty."

state filed a cross-motion for summary judgment on those claims, contending that Davis had offered no facts to establish that plaintiff's claims "in fact arose out of an alleged act or omission occurring in the performance of duty," as ORS 30.285 requires. The trial court denied Davis's motion and granted the state's cross-motion, concluding that "as a matter of law [Davis] was not entitled to the defense" because "having sexual intercourse with somebody is not within the performance of anybod[y's] duty in their role on the [EOU] faculty."

Davis assigns error to the court's denial of his motion for partial summary judgment and grant of the state's cross-motion for summary judgment. "Each party moving for summary judgment has the burden of demonstrating that there are no genuine issues of material fact," *McKee v. Gilbert*, 62 Or App 310, 321, 661 P2d 97 (1983), and that the moving party is entitled to judgment as a matter of law. *Eden Gate, Inc.*, 178 Or App at 622. We review an order granting summary judgment for legal error. *Ellis v. Ferrellgas, L. P.*, 211 Or App 648, 652, 156 P3d 136 (2007).

Davis seeks to enforce the state's duty to defend its employees under the OTCA, ORS 30.260 to 30.300. ORS 30.285(1) provides:

"The governing body of any public body shall defend, save harmless and indemnify any of its officers, employees and agents, whether elective or appointive, against any tort claim or demand, whether groundless or otherwise, *arising out of an alleged act or omission occurring in the performance of duty.*"

(Emphasis added.) In relevant part, ORS 30.285(3) provides:

"If any civil action, suit or proceeding is brought against any * * * employee * * * which on its face falls within the provisions of subsection (1) of this section, or which the * * * employee * * * asserts to be based in fact upon an alleged act or omission in the performance of duty, the * * * employee * * * may * * * file a written request for counsel with the Attorney General. The Attorney General shall thereupon appear and defend the officer, employee or agent unless after investigation the Attorney General finds that the claim or demand *does not arise out of an alleged act or omission occurring in the performance of duty,* * * * in which

case the Attorney General shall reject the defense of the claim."

(Emphasis added.)

Davis argues that, because the parties and the nature of the complaint conform to the requirements of ORS 30.285, he was entitled to the state's defense. He contends that the trial court erred in focusing on whether the sexual conduct occurred within the performance of duty, pointing to allegations that he created a hostile work environment, that he had a history of sexual harassment, that he was in a position with access and control over plaintiff, and that he was present at meetings with her for about a month after the alleged battery occurred. He emphasizes that, in his view, it is enough that plaintiff alleged that his actions were in the performance of duty, whether or not they actually were, citing ORS 30.285(1) (requiring the public body to defend against any tort claim, "whether groundless or otherwise" arising out of an "alleged" act or omission occurring in the performance of duty).

In response, the state argues that the trial court correctly concluded as a matter of law that Davis was not entitled to a state-provided defense because plaintiff's tort claims against him did not arise out of an act or omission occurring in the performance of duty. The state points out that ORS 30.285(3) provides that, if the Attorney General finds, after investigation, that the alleged act did not arise out of an alleged act or omission occurring in the performance of duty, then the Attorney General is directed to reject the employee's defense request. Although ORS 30.285(5) allows the employee to challenge the Attorney General's rejection of the defense by establishing that the underlying tort claim "in fact arose out of an alleged act or omission occurring in the performance of duty,"[2] Davis submitted no evidence

---

[2] ORS 30.285(5) provides, in part:

"If the Attorney General rejects defense of a claim under subsection (3) of this section or this subsection, * * * [s]uch action by the Attorney General shall not prejudice the right of the * * * employee * * * to assert and establish * * * that the claim * * * in fact arose out of an alleged act or omission occurring in the performance of duty, * * * in which case the * * * employee * * * shall be indemnified against liability and reasonable costs of defending the claim * * *."

to create an issue of fact that his sexual encounter with plaintiff occurred in the performance of duty. Accordingly, the state argues, the trial court did not err in granting the state's cross-motion for summary judgment and denying Davis's motion. The state further contends that neither plaintiff's allegation that Davis acted in the performance of duty nor her subjective belief that Davis was acting in the performance of duty because "a conference is a conference from the minute you get on the plane until the minute you get home" and because Davis was "the administrator in charge of the conference" created an issue of fact to avoid summary judgment.

As a preliminary issue, we agree with the state that plaintiff's allegation that Davis was acting within the course and scope of his duties as an employee did not establish that the state had a duty to defend him. ORS 30.285(3) plainly states that, when an action "on its face" falls within the provisions of ORS 30.285(1), the employee's right to "file a written request for counsel with the Attorney General" is triggered. The Attorney General then is required to defend the employee "unless after investigation the Attorney General finds that the claim or demand does not arise out of an alleged act or omission occurring in the performance of duty, * * * in which case the Attorney General shall reject defense of the claim." ORS 30.285(3). The employee may then challenge that decision in a proceeding under ORS 30.285(5), where the employee may "assert and establish" that the claim "in fact" arose out of an alleged act occurring in the performance of duty. Therefore, based on the statute's text, plaintiff's allegations alone are insufficient to establish the legal conclusion that plaintiff's claims arose out of actions that Davis took in the performance of duty; Davis must establish, "in fact," that plaintiff's claims against him "aris[e] out of an alleged act or omission occurring in the performance of duty." ORS 30.285(1), (3), (5).

We have not yet directly addressed what constitutes an "alleged act or omission occurring in the performance of duty" for purposes of the state's duty to defend under ORS 30.285. However, we previously have equated the concept of "scope of employment" with the required inquiry regarding "performance of duty" under ORS 30.285(1), noting that

"ORS 30.265(1) sets out the general scope of the OTCA
* * *." *City of Tualatin v. City-County Ins. Services Trust,*
129 Or App 198, 204, 878 P2d 1139 (1994) (describing the
issue in terms of whether "the tort arose from an act within
the scope of employment or performance of duty"); *see also
Howell v. Boyle,* 353 Or 359, 376, 298 P3d 1 (2013) ("under
ORS 30.265(1) and 30.285(1), the city remains liable for the
torts of its employees committed within the scope of employ-
ment"); *Durham v. City of Portland,* 181 Or App 409, 418,
45 P3d 998 (2002) (under ORS 30.285, a tort claim against
a public employee for acts that occurred within the scope of
employment must be brought solely against the public body).
ORS 30.265(1) provides that, "[s]ubject to the limitations of
ORS 30.260 to 30.300, every public body is subject to action
or suit for its torts and those of its officers, employees and
agents acting within the scope of their employment or duties
* * *." Accordingly, we begin by examining the law concern-
ing "scope of employment" as an aid to establishing whether
the alleged acts that formed the basis of plaintiff's claims
against Davis occurred in the "performance of duty."

In order to determine whether an employee was
acting within the scope of employment, three issues must
be examined: "(1) whether the act occurred substantially
within the time and space limits authorized by the employ-
ment; (2) whether the employee was motivated, at least par-
tially, by a purpose to serve the employer; and (3) whether
the act is of a kind which the employee was hired to per-
form." *Chesterman v. Barmon,* 305 Or 439, 442, 753 P2d
404 (1988). "Whether a particular act is within the scope of
employment is to be decided on its own particular facts and
circumstances by the trier of fact, but summary judgment
is appropriate when only one reasonable conclusion can be
drawn from the facts." *Brungardt v. Barton,* 69 Or App 440,
443, 685 P2d 1021 (1984).

We agree with the state that all three claims against
Davis arose out of one alleged act, Davis's sexual encounter
with plaintiff; no other allegations of Davis's actions in the
complaint support plaintiff's claims against Davis. The facts
recited in the complaint describe only the events that led to
plaintiff being in Davis's hotel room, where she alleges that
he raped her. Her claim against Davis for sex discrimination

then includes only legal conclusions without any additional facts. Her battery claim against Davis refers only to the alleged rape, alleging that he "brutally rap[ed] her" and that she "did not consent" and was "either unconscious or physically unable to move." She did not allege any additional conduct by Davis in support of her claim for intentional infliction of emotional distress.

The other allegations against Davis included in the complaint, such as the allegation of previous complaints against him for sexual harassment[3] and that he was present at meetings with plaintiff for another month after defendants had been notified of the alleged rape[4] do not support plaintiff's claims against Davis; rather, those allegations, if anything, support her claims that the other defendants failed to adequately protect her from him.

All that remains is the allegation that Davis raped plaintiff during an encounter in his hotel room in the middle of the night. At trial, Davis testified that the sexual encounter was consensual. When we apply the *Chesterman* test to the sexual encounter in question, we conclude that, even if consensual, it could not be considered an action taken in the course and scope of Davis's employment and in the performance of duty as a matter of law. To begin with the third *Chesterman* factor, as an EOU administrator, Davis was not hired to engage in sexual conduct with other employees. Further, addressing the second factor, there is no evidence that Davis, in engaging in sexual conduct with plaintiff, was motivated by a purpose to serve EOU.

Finally, we reject Davis's argument that the entire conference in Atlanta, from the time the plane departed Oregon, to the time the plane returned to Oregon, was an employment activity and, consequently, the middle-of-the-night sexual conduct "occurred substantially within the time and space limits authorized by the employment" (the

---

[3] Plaintiff alleged that "previous complaints had been made to * * * EOU against * * * Davis alleging sexual harassment and sexual misconduct."

[4] Plaintiff alleged that, after the state was notified that Davis had raped her, EOU "did not remove * * * Davis from the campus until more than a month later" and "permitted him to continue in his normal employment activities including meetings where [plaintiff] would be present."

first *Chesterman* factor). In the context of sexual assault cases, the Supreme Court has explained that it is not sufficient to show that the employment merely "brought the tortfeasor and the victim together in time and place and, therefore, gave the tortfeasor the 'opportunity' to commit the assault[]." *Fearing v. Bucher*, 328 Or 367, 377, 977 P2d 1163 (1999). Instead the plaintiff must prove the three *Chesterman* requirements, *id.*, and in all such cases where vicarious liability has been imposed, it was because the assault was connected to a relationship of trust that benefitted the employer. *See, e.g., id.* (where allegations that the defendant priest, operating in the role of spiritual guide, priest, youth pastor and mentor to plaintiff, became close to him and used his position of trust to spend large periods of time alone with plaintiff, physically touch plaintiff and ultimately, gain the opportunity to sexually assault plaintiff, provided a basis for a jury reasonably to infer that the priest's "performance of his pastoral duties with respect to plaintiff and his family were a necessary precursor to the sexual abuse and that the assaults thus were a direct outgrowth of and were engendered by conduct that was within the scope of [the priest's] employment"); *Lourim v. Swensen*, 328 Or 380, 386-87, 977 P2d 1157 (1999) (concluding that all three *Chesterman* requirements were met where a Boy Scout leader used his position to cultivate trust, which enabled him to gain the opportunity to sexually assault the plaintiff). Here, both Davis and plaintiff are adults and, although he was senior to her in the academic hierarchy, Davis was not plaintiff's supervisor. Without more evidence to indicate that the sexual encounter was connected to Davis's performance of his job duties, Davis has presented an insufficient basis for imposing a duty on the state to defend under ORS 30.285 for a sexual encounter that occurred in the middle of the night between two employees attending a work conference.

The public policy underlying the statute further bolsters our conclusion. Before the enactment of the OTCA, the state enjoyed absolute immunity from tort liability. *Smith v. Pernoll*, 291 Or 67, 69, 628 P2d 729 (1981). ORS 30.285 was designed "to eliminate the ground for concern by public employe[e]s that they can be held liable for a good faith

failure to use reasonable care." *Stevenson v. State of Oregon*, 290 Or 3, 12, 619 P2d 247 (1980). Furthermore, the policy underlying the statute is meant to "encourage qualified persons to accept public employment" and "encourage the zealous execution of public functions, duties, and responsibilities." *Welker v. TSPC*, 152 Or App 190, 198, 953 P2d 403 (1998). The purpose of the state's limited acceptance of liability for its employees' torts was to eliminate concern that the prospect of personal liability "might dampen the ardor of public employe[e]s in the performance of their duties[.]" *Stevenson*, 290 Or at 13. In this case, the state's refusal to indemnify Davis for an action arising from his sexual conduct with another employee is unlikely to discourage qualified persons from accepting public employment or discourage public employees from zealously performing their duties. Davis's conduct was not a "good faith failure to use reasonable care" in performing the duties he was hired to do, but rather a private act. *See Stevenson*, 290 Or at 12.

Because plaintiff's tort claims against Davis all arise out of an act—Davis's sexual encounter with plaintiff—that did not occur in the performance of duty, we conclude that the trial court did not err in concluding that the state had no obligation to defend him.

Affirmed.